NOT FOR PUBLICATION                                              (Docket No. 5)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____ :
                                    :
LABORERS INTERNATIONAL UNION        :
OF NORTH AMERICA, LOCAL NO.         :
199 WELFARE, PENSION,               :
APPRENTICESHIP AND TRAINING         :
AND ANNUITY FUNDS, et al.           :
            Plaintiffs,             :   Civil No. 04-6004(RBK)
                                    :
        v.                          :   **OPINION**
                                    :
R.E. PIERSON CONTRACTING            :
COMPANY,                            :
                                    :
            Defendant.              :
_____ :

**KUGLER**, United States District Judge:

    This matter comes before the Court on motion by Laborers International Union of North America, Local No. 199 Welfare, Pension, Apprenticeship and Training and Annuity Funds, et al. ("Plaintiffs"), for a default judgment of their claim against Defendant R.E. Pierson Contracting Company ("Defendant"). For the reasons set forth below, Plaintiffs' motion will be granted in part and denied in part.

**I.    Background**

    Plaintiffs, multi-employer benefit funds and their trustees, commenced the above-captioned suit on December 9, 2004, alleging that Defendant, an employer subject to a collective bargaining agreement ("Agreement") with Plaintiffs, neglected to make timely

contributions to the funds as required by the terms of the Agreement. In particular, the Agreement obliged Defendant to make all employee benefit contributions such that they would be received by the fund on or before the fifteenth day of the month following the month in which the benefits were earned. (Pls. Compl. ¶ 17.) The Agreement provided for a 10% liquidated damages charge for all late payments. (Pls. Compl. ¶ 17.)

Plaintiffs allege that Defendant failed to make timely contributions in breach of the Agreement, after employing workers covered by its provisions in January 2002 through October 2002 and May and September 2003. During these periods, Defendants allegedly made a total of $40,049.90 in late payments, thereby incurring liquidated damages of $4,004.99.[1] Plaintiffs also request interest, costs, and reasonable attorney's fees as provided by the Agreement and ERISA. Plaintiffs have not provided

---

[1] Defendant's late contributions consist of: (1) $4,346.20 received August 19, 2002, for work performed in January 2002, (2) $1,474.60 received August 19, 2002, for work performed in February 2002, (3) $2,294.40 received August 26, 2002, for work performed in March 2002, (4) $357.83 received August 26, 2002, for work performed in April 2002, (5) $6,054.00 received September 6, 2002, for work performed in May 2002, (6) $5,440.00 received September 9, 2002, for work performed in June 2002, (7) $5,767.80 received September 16, 2002, for work performed in July 2002, (8) $2,219.70 received September 23, 2002, for work performed in August 2002, (9) $5,679.50 received October 24, 2002, for work performed in September 2002, (10) $2,258.30 received December 9, 2002, for work performed in October 2002, (11) $322.40 received December 12, 2003, for work performed in May 2003, and (12) $524.70 received December 12, 2003, for work performed in September 2003. (Pls. Compl. ¶¶ 19-30.)

a copy of the Agreement to the Court.

Defendant was served on February 28, 2005. After Defendant did not file an answer or otherwise make an appearance, Plaintiffs requested a default on April 27, 2005, which was entered by the Clerk of the Court on April 29, 2005. Plaintiff subsequently moved for a default judgment on October 17, 2005, requesting $4004.99 in liquidated damages, $2,091.00 in attorney's fees, and $220.50 in court costs for a total of $6,316.40. As of the date of this Opinion, Defendant has not made an appearance or opposed Plaintiffs' motion.

**II.  Standard for Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, though such "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1180, 1181 (3d Cir. 1984) (citations omitted).

Before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Directv, Inc. v. Asher, Slip Copy, 2006 WL 680533 (D.N.J. 2006) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998); Directv, Inc. v. Croce, 332 F. Supp 2d 715, 717 (D.N.J. 2004)). Although the Court need not accept the moving party's legal conclusions, the "defendant is deemed to have admitted the factual allegations of the Complaint by virtue of his default, except those factual allegations related to the amount of damages." Asher, 2006 WL 680533 (citing Federal Practice and Procedure § 2688, at 58-59).

Lastly, before granting a default judgment, the Court must also consider three factors: (1) will plaintiff will be prejudiced if default is not granted, (2) does defendant has a meritorious defense, and (3) was defendant's delay was the result of culpable misconduct? Carpenters Health and Welfare Fund v. Naglak Design, 1995 WL 20848 *2 (E.D. Pa. 1995) (granting default judgment in case similar to that at bar, for failure to submit remittance reports and pay contributions to funds as required by collective bargaining agreement) (citing Emasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987); Hritz, 732 F.2d 1178, 1180).

4

**III. Analysis**

Section 515 of ERISA provides in relevant part: "[e]very Employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collective bargaining agreement shall . . . make such contributions in accordance . . . with such agreement." 29 U.S.C. § 1145; Rubenstein v. Tri-State Transp., Inc., 646 F. Supp. 1 (D. Mass. 1984) (granting summary judgment against defendant employer for failure to make contributions to multi-employer fund as required by collective bargaining agreement). Where employers fail to make such contributions to a multi-employer plan in compliance with a standing collective bargaining agreement:

> the court shall award the plan (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages . . . , (D) reasonable attorney's fees and costs of the action . . . , and (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132 (g); see also Rubenstein, 646 F. Supp. at 3 (entering judgment against employer for missed contributions, "plus interest, statutory liquidated damages and reasonable costs and attorney's fees"); Plumbers' Pension Fund, Local 130, U.A. v. Tortorello's Sprinkling Sys., 1993 WL 88091, *1-2 (N.D. Ill. 1993) (awarding liquidated damages and interest for failure to comply with terms of collective bargaining agreement).

Defendant, an employer under ERISA, entered into a

collective bargaining agreement with Plaintiffs that obliged Defendant to make requisite contributions by the fifteenth of the month following the month Defendant employed a covered worker. (Compl. ¶¶ 15-16.) As Defendant did not comply with the Agreement, Defendant is now subject to the ramifications of 29 U.S.C.A. § 1132(g), including the 10% liquidated damages charge provided in the Agreement.[2] Teamsters Pension Trust Fund of Phila. and Vicinity v. C. Harris Const. Co., 1994 WL 273316, *1 (E.D. Pa. 1994) (granting unopposed motion for default judgment in Section 515 action against defendant employer who failed to make contributions to plaintiff fund under collective bargaining agreement). The Complaint provides that Defendant made a total of $40,049.90 in late payments, thereby incurring liquidated damages of $4,004.99.

Finally, before entering judgment, the Court must address the three factor test for default judgments: (1) prejudice to plaintiff, (2) potentially meritorious defenses, and (3) defendant's culpability. Emasco Ins. Co., 834 F.2d 71. These factors are naturally of greater significance in circumstances

---

[2] Although Plaintiffs did not provide this Court with a copy of the Agreement, Defendant's default constitutes an admission of every "well-pleaded allegation" in the Complaint. TMS Entm't Ltd. v. Madison Green Entm't Sales, Inc., 2005 WL 2063786 *2 (S.D.N.Y. 2005) ("Following a default judgment, all well-pled factual allegations of the complaint, except those relating to damages, are accepted as true.")(citing Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993)); Asher, 2006 WL 680533 *2.

6

where defendant has made a tardy appearance or wishes to reopen a defaulted case. Here, as Defendant has made no appearance, the Court is "not in a position then to determine whether [Defendant] has a meritorious defense or whether any delay is the result of culpable misconduct." <u>Carpenters Health</u>, 1995 WL 20848 *2 (E.D. Pa. 1995).

Moreover, because Plaintiff has "no other means of vindicating its claim against" Defendant, Plaintiff will be prejudiced if the default is not granted. <u>Asher</u>, 2006 WL 680533 *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default"); <u>Carpenters Health</u>, 1995 WL 20848 *2 (E.D. Pa. 1995) (holding failure to make timely payments to plaintiff multi-employer benefit fund prejudices plaintiff).

Accordingly, entry of default judgment is appropriate and Defendant will be ordered to pay Plaintiffs in the amount of $4,004.99 of liquidated damages.

**IV.  Attorney's Fees**

Although 29 U.S.C. § 1132 provides for an award of "reasonable attorney's fees and costs of the action," 29 U.S.C.A. § 1132(g)(D), "[t]he burden rests on the party requesting the award to establish the "reasonableness" of the "hourly rate and number of hours." <u>Washington v. Philadelphia County Ct. of C.P.</u>,

7

89 F.3d 1031, 1035 (3d Cir. 1996) (citing Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984)). To satisfy this burden, "the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" Interfaith Cmty. Org. v. Honeywell Intern., Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)).

In particular, counsel "must produce satisfactory evidence—in addition to [their] own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984); Becker v. ARCO Chem. Co., 15 F. Supp. 2d 621 (E.D. Pa. 1998) ("The prevailing party's burden may be satisfied by the submission of affidavits of attorneys with personal knowledge of the hourly rates customarily charged in the relevant market."). Mere "conclusory affidavits from counsel" are not enough to establish the reasonableness of a rate. Furniture Medic, LP v. Faber, 2001 WL 1528337 (E.D. Pa. 2001).

In addition, Local Civil Rule 54.2(a) requires that:

> [A]n attorney seeking compensation for services or reimbursement of necessary expenses shall file with the Court an affidavit ... setting forth the following:
> (1) the nature of the services rendered, the amount of the estate or fund
> in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of services rendered;
> (2) a record of the dates of services rendered;

>     (3) a description of the services rendered on each of
>     such dates by each person of that firm including the
>     identity of the person rendering the service and a
>     brief description of that person's professional
>     experience;
>     (4) the time spent in the rendering of each of such
>     services; and
>     (5) the normal billing rate for each of said persons
>     for the type of work performed.

L. Civ. R. 54.2(a).

Plaintiffs request $2,091.00 in attorney's fees and $220.50 in costs. In support of this claim, Plaintiffs provide only the Certification of their counsel of record, R. Matthew Pettigrew, Jr., Esquire. In his affidavit, Pettigrew attests that he charges an hourly rate of $255.00 and that he spent a total of 8.2 hours on the case at bar.

Plaintiffs proffer no affidavits, besides that of Plaintiffs' counsel, attesting to the reasonableness of the fee, nor did Pettigrew's affidavit provide "a record of the dates of services rendered," or any description of the professional experience of the person rendering the service, as required by Local Rule 54.2(a). Nor did Plaintiffs provide a copy of the Agreement at issue, state whether the Agreement itself provides for attorney's fees, or proffer any justification for spending 8.2 hours on a defaulted case, the bulk of which was allegedly spent on the motion for default.

Accordingly, Plaintiffs are not entitled to attorney fees until they comply with the local rules and satisfy their burden of establishing the reasonableness of the amount claimed.

The accompanying Order shall issue today.


Dated: 4/7/06                S/Robert B. Kugler
                             ROBERT B. KUGLER
                             United States District Judge